UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: WESTBANK INNS, ET AL.                CIVIL ACTION

v.
                                            NO. 05-6450
                                             c/w 05-6451
                                               and 05-6453

MICKEY O'CONNOR, ET AL.                     SECTION "F"

ORDER AND REASONS

Before the Court is an appeal from the United States Bankruptcy Court's order remanding the suit for lack of subject matter jurisdiction. For the reasons that follow, the bankruptcy court is AFFIRMED.

Background

This dispute centers on whether a debtor may collect partnership distributions from a partnership agreement that passed through to the pre-bankruptcy debtor unaffected by the bankruptcy, following confirmation of that debtor's reorganization plan/liquidating trust. But the merits of that dispute are not before this Court. Rather, this appeal concerns only the bankruptcy court's determination that it lacked jurisdiction over the debtor's suit against the partnership to recover his post-

1

confirmation partnership distributions.  A similar dispute is also pending in the bankruptcy court between the Trustee of the debtor's liquidating trust against that same partnership to collect those same partnership distributions.  This bitter dispute seems now to date to Pre-History.

In 1982, Mickey O'Connor, Ronald Case, Auby Smith, and John Stumpf formed Westbank Inns, a Louisiana partnership.  Later that year, Westbank Inns entered into a joint venture with LaQuinta Motor Inns.  Westbank Inns owns a 40% interest in the joint venture, which owns and operates a LaQuinta Inn in Gretna, Louisiana.

A.

*The Bankruptcy Court Proceedings*:   O'Connor I

In 1987, Mickey O'Connor ("O'Connor" or "Debtor") filed a petition for relief under Chapter 11 of the Bankruptcy Code.  On May 13, 1994, the bankruptcy court confirmed a second amended plan of reorganization; it provided that the assets of O'Connor's estate be liquidated and the proceeds distributed to creditors.  Frank McGee, who had been trustee of O'Connor's bankruptcy estate, was appointed trustee of the liquidating trust.  Creditors of the estate were named as trust beneficiaries.  This tempestuous story has taken on a life of its own since then.

In 1995, the Trustee filed an adversary action against John Stumpf, Harry Stumpf, and Lincoln Case, seeking a judgment: (i) declaring the partnership interests of Ronald Case and Auby Smith in Westbank Inns terminated by operation of law; (ii) declaring that any purported transfer to John Stumpf, Lincoln Case, and Harry Stumpf of the partnership interests formerly owned by Case or Smith were null, void and of no effect as against O'Connor's Chapter 11 estate; (iii) determining the dollar value of the terminated partnership interest of Case and Smith; (iv) seeking to establish that the terminated partnership interests of Case and Smith passed proportionately to O'Connor's Chapter 11 estate and fixing the increased percentages of ownership in Westbank Inns; and (v) ordering an accounting to O'Connor's Chapter 11 estate of distributions received by John Stumpf, Lincoln Case, and Harry Stumpf or those portions attributable to the terminated interests of Case and Smith.

On May 6, 1998, the bankruptcy court held the following:

> (i)  the status of Case and Smith as partners of Westbank Inns was terminated on April 26, 1989 and March 26, 1990, respectively;
>
> (ii)  all transfers of their partnership interests undertaken by Case, Smith and John Stumpf are declared to be null and void;
>
> (iii) the plaintiff/trustee is entitled to an accounting from the defendants of all

       partnership distributions made to them on account of the voided transfers;

       (iv) the debotor's interest in Westbank Inns, and his status as a partner, passed through the bankruptcy, and is still an asset of the reorganized debtor;

       (v) the trustee is entitled to an accounting from the defendants of all partnership distributions that should have been made to the debtor's estate on account of his partnership interest; and

       (vi) the parties will set up an evidentiary hearing on the issue of valuation of the interests of former partners Case and Smith.

On appeal, this Court affirmed in part and reversed in part. This Court found that the partnership agreement was unassumable and passed through the bankruptcy unaffected by the bankruptcy proceedings so that the agreement remained binding on the debtor. Further, this Court noted that the agreement "is not a part of the Debtor's estate[;] [r]ather, the Debtor himself is the only person with rights and obligations under the Partnership Agreement."

On further appeal by the Trustee, the Fifth Circuit affirmed this Court's dismissal of the trustee's claims. Stumpf v. McGee (In re O'Connor), 258 F.3d 392, 402 (5th Cir. 2001) ("O'Connor I"). The Fifth Circuit held that (i) the partnership agreement was not assumable under 11 U.S.C. § 365(c)(1); (ii) although the Louisiana Civil Code Article 2812 allows a partner to share his interest with

4

a third party without the consent of the other partners, he "cannot confer partnership status upon the third party...[u]nless he is a partner, such third party has no right to assert a claim against the remaining partners, or the partnership"; and (iii) under Louisiana Civil Code Article 737, "the partnership would be an indispensable party in any action by the Trustee to recover the value of O'Connor's interest." 258 F.3d at 403. The Fifth Circuit added:

> ...the district court correctly held that the partnership agreement did not pass through bankruptcy to the Reorganized Debtor. Instead, it passed through to the pre-bankruptcy Debtor, unaffected by the bankruptcy proceedings.

Importantly, however, the Fifth Circuit made special mention of what was not before this Court in O'Connor I. First, in agreeing with this Court that the partnership agreement was not assumable and not part of the debtor's estate, but instead remained binding on the debtor, the Fifth Circuit noted that:

> At first blush, it obviously seems quite contrary to the purpose of the Bankruptcy Code for the Debtor, *not* his estate, to have the right to those distributions. That issue, however, was *not* before the district court, and...is *not* before us, because the Trustee did *not* seek to recover the economic value of the Debtor's interest, including by not suing the partnership.

5

Id. at 402-02 (emphasis in original).[1]  Accordingly, O'Connor I did not decide whether O'Connor's economic interest in the partnership is property of the bankruptcy estate.  Nor did it decide whether the debtor (and not his estate) has the right to partnership distributions under the Bankruptcy Code.

The case was remanded to this Court "with instructions to remand it to the bankruptcy court for such further proceedings, if any as may be appropriate....."  258 F.3d at 405.  The bankruptcy court took no further action; the case was closed on January 28, 2003.

B.

O'Connor II

On August 2, 2002, the Trustee and Debtor filed a complaint for declaratory relief and for an accounting by WBI, Lincoln Case, and John and Harry Stumpf, as well as a for judgment requiring WBI to pay O'Connor's proportionate share of all funds distributed to date in accordance with his partnership interest.  WBI moved to dismiss on the ground that the bankruptcy court lacked subject

---

[1] The Fifth Circuit made the point again later in the opinion: "the district court addressed only the Trustee's claimed right to proceed as a partner under the partnership agreement, and did not address the Trustee's authority under the Bankruptcy Code, to proceed against the partnership to recover the value of the Debtor's interest in it."  Id. at 404.

matter jurisdiction over O'Connor's claims against it because the outcome would not affect the bankruptcy estate.

On February 25, 2003, the bankruptcy court ruled that: (i) it lacked jurisdiction over O'Connor's claims against Westbank Inns and those against John Stumpf, Harry Stumpf, and Lincoln Case because the claims would not affect the bankruptcy estate; and (ii) although it had jurisdiction over the Trustee's claims, those claims were barred by res judicata because they were asserted in O'Connor I.  The bankruptcy court further ruled that counts one through six of the Trustee's claims were dismissed based on the Fifth Circuit's ruling in O'Connor I.  Finally, the bankruptcy court held that WBI only had to account to the Trustee for distributions made *prior to* confirmation.  On April 16, 2003, the bankruptcy court denied Westbank Inns' motion for partial rehearing.  As of May 2003, O'Connor II (as remaining between the Trustee and WBI) became dormant.[2]

---

[2] On May 16, 2005, the Trustee amended his complaint to allege that he "is entitled to the entire value of the interest of Mickey O'Connor in the Westbank Inns' partnership as it existed on the date of the Plan of Reorganization was confirmed."  That is the sole remaining allegation pending in the bankruptcy court in O'Connor II.

C.

*The Present State Court Suit*:   O'Connor III

On September 29, 2003, O'Connor filed suit in state court, against WBI, John Stumpf, Jr., Lincoln Case, and Harry Stumpf. His state court suit seeks an order: (i) requiring WBI to remit to him all partnership distributions attributable to his initial 31-1/4% interest from May 13, 1994, which is the bankruptcy confirmation date, to the present; (ii) declaring O'Connor to be the owner of an additional 18-3/4% interest in WBI representing his proportionate share of the interests of Case and Smith; and (iii) requiring defendants to give him all partnership distributions for the additional 18-3/4% interest from May 13, 1994 to the present.

WBI and Harry Stumpf filed an exception of no right of action (claiming that O'Connor was no longer a partner), which the state court denied on January 31, 2005.[3] Defendants' application for supervisory writs regarding the denial of their exception was also denied. On May 2, 2005, defendants went to the Louisiana Supreme Court with an application for supervisory writs regarding the intermediate appellate court's denial of the previous application

---

[3] In overruling the defendants' exception of no right of action, the state court considered both this Court's and the Fifth Circuit's opinion in O'Connor I, as well as the bankruptcy court's opinion in O'Connor II.

for supervisory writs.

Meanwhile, on May 11, 2005, in O'Connor II, the Trustee moved to amend the complaint previously filed in O'Connor's bankruptcy case against Westbank Inns, John Stumpf, Lincoln Case, and Harry Stumpf.  In the Amended Complaint, the Trustee alleges that O'Connor's bankruptcy estate liquidating trust is entitled to the value of all of O'Connor's partnership interest.[4]

One day later, on May 12, the Trustee filed a Motion to Intervene as Plaintiff in the state court lawsuit alleging that he has claims against Westbank Inns pending in bankruptcy court that overlap with O'Connor's claims against Westbank Inns in the state court suit.[5]  The next day, Westbank Inns and Harry Stumpf filed a Notice of Removal of the State Action[6] and a Motion to Refer Proceedings to the Bankruptcy Court.

On May 17, 2005, Judge Barbier referred the state lawsuit to

---

[4] On May 16, 2005, the bankruptcy court permitted the Trustee to amend his complaint to allege that he "is entitled to the entire value of the interest of Mickey O'Connor in the Westbank Inns' partnership as it existed on the date of the Plan of Reorganization was confirmed."  That is the sole remaining allegation pending in the bankruptcy court in O'Connor II.

[5] In the state lawsuit, O'Connor filed a petition for sequestration of $1,784,387,000 of property of Westbank Inns.  The petition was set for hearing on May 13, 2005, the same day Westbank Inns filed its notice of removal.

[6] On June 16, 2005, John Stumpf joined in the removal.

the bankruptcy court. The hateful feast of point-counterpoint carried on. On June 2, 2005, O'Connor filed in bankruptcy court a motion to remand the state fight and on October 3, 2005, the bankruptcy court granted O'Connor's motion to remand, concluding that it lacked subject matter jurisdiction under 28 U.S.C. § 1334. In granting the motion to remand, the bankruptcy court found that "O'Connor's claims against the defendants do not involve an interpretation of plan provisions." Rather, the bankruptcy court noted that the Fifth Circuit had ruled in O'Connor I that the partnership agreement passed through the bankruptcy to the pre-bankruptcy debtor, unaffected by the bankruptcy and that O'Connor now seeks post-confirmation distributions.[7] The bankruptcy court further noted that "Louisiana partnership law, not bankruptcy law, will determine the outcome of the proceeding."

On November 3, 2005, Westbank Inns and Harry Stumpf filed a Notice of Appeal of the Bankruptcy Court's Order of Remand.

---

[7] In granting the motion to remand, the bankruptcy court was instructed by the Fifth Circuit's decision in Craig's Stores to forego the broader "related to" jurisdictional test in favor of a narrower test for post-confirmation jurisdiction. Matter of Craig's Stores of Texas, 266 F.3d 388 (5th Cir. 2001). The bankruptcy court also noted that it had previously ruled, in O'Connor II, that the court lacked jurisdiction over O'Connor's post-confirmation claims and that WBI is judicially estopped from taking an inconsistent position because it had even argued that the court lacked jurisdiction over his claims because the outcome would not affect the estate.

O'Connor moved to dismiss the appeal on the ground that a bankruptcy court's order remanding a case is a non-reviewable order pursuant to 28 U.S.C. § 1447.[8]  This Court denied O'Connor's motion on January 26, 2006.  Now the Court addresses the merits of this appeal of the bankruptcy court's ruling that the suit must be remanded to state court.

## I. Standard of Review

A district court functions as an appellate court when reviewing a bankruptcy court's decision. In re Matter of Webb, 954 F.2d 1102 (5th Cir. 1992).  The standard of review depends on whether a finding of fact or conclusion of law is being reviewed. Findings of fact are reviewed under the clearly erroneous standard, and conclusions of law are subject to de novo review.  See In re Delta Towers, Ltd., 924 F.2d 74, 76 (5th Cir. 1991).  Jurisdiction is a legal determination that is reviewed de novo.  See Matter of U.S. Brass Corp., 301 F.3d 296, 303 (5th Cir. 2002).  Judicial estoppel is an equitable doctrine and the decision whether to invoke it is within the court's discretion.  Therefore, decisions on the application of the doctrine of estoppel are reviewed for

---

[8] On December 22, 2005, this Court granted O'Connor's Motion to Set Hearing on Motion to Dismiss Appeal.  The Court also suspended briefing deadlines applicable to the appeal of the bankruptcy court's order, pending the Court's decision on O'Connor's Motion to Dismiss Appeal.

11

abuse of discretion.  See Matter of Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999).

## II. Subject Matter Jurisdiction

Appellants contend that the state court action is a core bankruptcy proceeding over which the bankruptcy court has exclusive jurisdiction.  The bankruptcy court, applying Craig's Stores, O'Connor I, and the principle of judicial estoppel, determined that it lacked even the more generous "related to" jurisdiction over this dispute, where O'Connor seeks to recover partnership distributions made post-confirmation.  Accordingly, the Court must determine whether it has jurisdiction over O'Connor's state court suit to recover post-confirmation partnership distributions.[9]

Under 28 U.S.C. § 1452(a), a party may generally remove any claim in a civil action to the federal district court if jurisdiction is based on 28 U.S.C. § 1334.  Title 28 U.S.C. § 1334(b) confers on federal district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  The Fifth Circuit has adopted the Third Circuit's definition of "related to"

---

[9] The Court takes into account the "related to" test as well because it commands a less strict scrutiny and was in part what informed the bankruptcy court's decision.  But see Craig's Stores, supra.

12

bankruptcy jurisdiction: A case is "related to" a bankruptcy proceeding if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." Matter of Wood, 825 F.2d 90, 93 (5th Cir. 1987) (emphasis in original), quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).[10]

As the appellants here argued in support of their motion to dismiss O'Connor's claims in O'Connor II, the key to "related to" bankruptcy jurisdiction is that the "plaintiff's claims must affect the estate, not just the debtor." See Bass v. Denney (In re Bass), 171 F.3d 1016, 1022 (5th Cir. 1999). As the Fifth Circuit has further instructed: "[t]his test is obviously conjunctive: For jurisdiction to attach, the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." Id. at 1022-23.

"[B]ankruptcy jurisdiction does not last forever[.]" Matter of Craig's Stores of Texas, 266 F.3d 388, 389 (5th Cir. 2001).[11]

---

[10] The Fifth Circuit has observed that it is unnecessary to distinguish between proceedings arising under or related to a case under title 11; it is necessary only to determine if the case is related to the bankruptcy. Matter of Wood, 825 F.2d at 93.

[11] Although the life of this dispute might thus far suggest otherwise.

Indeed, in the post-confirmation context, bankruptcy jurisdiction is narrower than "related to" jurisdiction.  In Craig's Stores, the Fifth Circuit adopted a "more exacting theory of post-confirmation bankruptcy jurisdiction...because it comports more closely with the effect of a successful reorganization under the Bankruptcy Code than the expansive jurisdiction cases."  266 F.3d 388 (5th Cir. 2001).  Because there is no estate left to reorganize, "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist other than for matters pertaining to the implementation or execution of the plan."  Id. at 390 (citations omitted).

In Craig's Stores, the debtor's confirmed plan assumed a pre-petition contract with the Bank of Louisiana, in which the Bank administered the debtor's private label credit card program and purchased the debtor's receivables.  Id. at 389.  The contract was assumed as part of the debtor's reorganization plan after Craig's Stores sought Chapter 11 bankruptcy protection.  Id.  Eighteen months after the plan was confirmed in December 1994, Craig's Stores sued the Bank in bankruptcy court, asserting state law claims for damages alleged to have arisen in 1994 and 1995.  Id.  The district court raised the issue of subject matter jurisdiction and dismissed Craig's claims.  Id. at 390.

Agreeing that Craig's claims principally dealt with post-confirmation relations between the parties, the Fifth Circuit determined that "the state law causes of action asserted by Craig's do not bear on the interpretation or execution of the debtor's plan and therefore do not fall within the bankruptcy court's post-confirmation jurisdiction." Id. at 391. The Fifth Circuit noted that: (1) there was no claim pending between the parties as of the date of reorganization; (2) the assumption of the underlying contract as part of the plan was of no special significance; and (3) no facts or law deriving from the reorganization or the plan was necessary to Craig's claim against the Bank. Id.

Appellants contend that the decision in Craig's Stores is "so totally inapposite to the case here as to defy comparative analysis" because, say appellants, O'Connor's claim (1) is asserted by the debtor for himself, not for the "reorganized debtor" (2) is against a third party to the debtor's bankruptcy; and (3) seeks property of the estate over which the bankruptcy court has exclusive jurisdiction. The Court disagrees. Appellants' attempt to distinguish Craig's Stores ignores completely the premise of that decision, which is not surprising considering appellants' preference for this Court to disregard other Fifth Circuit

precedent.[12]

Here, neither party suggests that the post-confirmation dispute over post-confirmation partnership distributions has anything to do with any obligation created by the debtor's reorganization plan. Appellants rather cavalierly protest that O'Connor's post-confirmation partnership distributions are property of the bankruptcy estate. Their position defies common sense and insults prior court rulings. They also conclude, through a process that only alchemy could hope to produce, that the claims in O'Connor II and those in the present suit are different and therefore subject to different jurisdictional defenses. Yet, in O'Connor II, in support of their motion to dismiss O'Connor's claims to partnership distributions in the bankruptcy court,

---

[12] Appellants' purported jurisdictional hook rests entirely on their characterization of O'Connor's claim as being for estate property. Appellants fail to point to or provide any support for this position. How is O'Connor's suit a matter pertaining to the implementation or execution of the liquidating trust? In 50+ pages of original and reply briefs, they fail to persuade the Court that O'Connor's action will affect the plan. Instead, appellants spend their time briefing their belief that this Court's and the Fifth Circuit's determination in O'Connor I, which held that the partnership agreement passed through unaffected by the bankruptcy to the pre-bankruptcy debtor, is "obiter dictum [or]...in any event...clearly wrong." Even if this Court agreed with them, which it does not, this Court is bound by precedent, not the mythology advocated in their papers. Finally, it is instructive to also point out that appellants fail the lesser "related to" standard as well.

appellants admitted that "any action by O'Connor will have no impact on the bankruptcy estate administered by the Trustee."  In O'Connor II, the bankruptcy court agreed that it lacked jurisdiction and dismissed O'Connor's claims.  Likewise, here, bankruptcy jurisdiction over O'Connor's claims is lacking.[13]

Because the Court finds that it lacks jurisdiction over this post-confirmation dispute about partnership distributions, it need not address the parties' other contentions.  However, the Court notes that, even if it determined that this Court had "related to" jurisdiction over O'Connor's state law claims to partnership distributions, (which it does not), remand would still be appropriate because of appellants' untimely removal.  See 28 U.S.C. § 1446(b); see also Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995) and Belser v. St. Paul Fire and Marine Ins. Co., 965 F.2d 5 (5th Cir. 1992).

---

[13] Appellants suggest that O'Connor and the Trustee are claiming the same or overlapping interest from WBI and that remand would subject to WBI to the risk of inconsistent decisions of the state court and the bankruptcy court. (Perhaps they are suggesting that "risk of inconsistent decisions" confers bankruptcy jurisdiction.)  Ironically, when O'Connor and the Trustee filed suit jointly in bankruptcy court, WBI moved to dismiss O'Connor's claims for lack of jurisdiction.  And when O'Connor filed this action in state court, appellants waited a year to remove the suit.  At this point, the Court can only marvel at WBI's litigation strategy; the bankruptcy court did not abuse its discretion when it invoked the principle of judicial estoppel.

Accordingly, the judgment is AFFIRMED.  The case is hereby remanded to the 24th Judicial District Court for the Parish of Jefferson.

New Orleans, Louisiana, September 27, 2006.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE